# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DINA CAPITANI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00120** |
| | ) | |
| **WORLD OF MINIATURE BEARS,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Dina Capitani brought this copyright infringement action against World of Miniature Bears, Inc. ("World of Miniature Bears") and MiniBears Gems & Gifts, Inc. ("MBG") (collectively, "Defendants"), alleging that Defendants advertised and sold products that infringed on her copyright interests in dog breed illustrations she created. On September 1 and 2, 2020, the Court conducted a bench trial[1] on the issues of liability and damages and heard testimony from Capitani, Christopher Nimeth, and Theresa Yang. After the trial, the parties submitted post-trial briefs and proposed findings of fact and conclusions of law. (Doc. Nos. 110–20). Based on the record before the Court and the parties' arguments, the Court finds that Capitani met her burden of persuasion to prove that MBG is liable for copyright infringement, but that she did not prove by a preponderance of the evidence that World of Miniature Bears is also liable. The Court further finds that Capitani is entitled to damages and equitable relief, as explained below.

In support of this conclusion, the Court enters the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).

---

[1] This case was originally set for a jury trial, but the parties withdrew their respective jury demands and this matter was reset as a bench trial. (Doc. Nos. 74, 82.)

# I. FINDINGS OF FACT[2]

## A. **Doggie Doodles' Copyright and Licensing Agreement**

1.      Capitani is an individual artist who created and authored original illustrations of various dog breeds, which are included in a volume of work titled "Doggie Doodles by Dina Volume II" (hereinafter "Doggie Doodles"). (Tr. Vol. 1 at 18–19). The dog breed images in Doggie Doodles are Capitani's interpretation or representation of dogs that contain distinctive and unique characteristics, such as cartoonish eyes looking straight ahead or a red heart on their collar. (Id. at 19–22).

2.      In July 2011, non-party Geoffrey Roebuck took an interest in Capitani's Doggie Doodles and wanted to license some of the images so he could use them on products to sell through his company "Passion for Pets." (Id. at 23–24, 40–41, 57, 64, 84).

3.      On July 28, 2011, Capitani entered into a Licensing Agreement with Geoffrey Roebuck and his wife Cathy Roebuck that allowed them to sell various products, including wall clocks, bearing 29 separate images of Doggie Doodles.[3] (Id. at 28; P. Ex. 2). In return, Capitani would receive royalties of "5% of the total price paid to the factory by [the Roebucks] for production of the Licensed Products," or "at least $25,000 per contract year." (P. Ex. 2 at 2–3). On

---

[2] The Court's Findings of Fact do not encompass a complete recitation of the record. Accordingly, the omission of any particular detail in this section should not be construed as the Court's failure to consider that detail or inferences it would support, but rather, should indicate merely that some details were omitted in the interest of conveying a manageably concise presentation of the relevant evidence and details that the Court considered ultimately dispositive. And except where the Court discusses differing testimony on a specific issue, the Court has considered and rejected any contrary testimony regarding that matter in favor of the specific fact found. Last, for ease of reference, the Court will cite to the September 1, 2020 trial transcript (Doc. No. 108) as "Tr. Vol. 1" and the September 2, 2020 trial transcript (Doc. No. 109) as "Tr. Vol. 2." The Court will also refer to the exhibits admitted at trial as follows: Joint Exhibits ("J. Ex."), Plaintiff's Exhibits ("P. Ex."), and Defendants' Exhibits ("D. Ex.").

[3] Cathy Roebuck did not sign the Licensing Agreement. (P. Ex. 2 at 5; Tr. Vol. 1 at 79–80).

Case 3:19-cv-00120   Document 121   Filed 08/02/21   Page 2 of 27 PageID #: 2274

September 26, 2011, the Licensing Agreement was amended to include an additional 25 images of Doggie Doodles, bringing the total number of licensed dog breed images to 54. (Id.).

4.      The Licensing Agreement further provided that the duration of the license was "for an initial term of 3 years from August 1, 2011 until August 1, 2014, with renewal subject to negotiation at that time." (Id. at 2).

5.      Regarding "Sell-off Rights," the Licensing Agreement stated as follows:

> Upon expiration of the Term [the Roebucks] shall have a period of 180 days in which to sell-off previously manufactured Licensed Articles on a non-exclusive basis, subject to [the Roebuck's] obligation to pay Royalties on and account to [Capitani] for such sales. Upon expiration of the sell-off period, all remaining Licensed Articles shall upon [Capitani's] option be sold to [Capitani] at [the Roebuck's] direct cost of manufacture, excluding overhead, or [the Roebucks] shall destroy the Licensed Articles and furnish [Capitani] with a sworn certificate of destruction.

(Id. at 5).

6.      On August 29, 2011, Capitani registered 79 separate images of her Doggie Doodles with the U.S. Copyright Office and acquired a valid copyright in those images.[4] (Tr. Vol. 1 at 31–32; J. Ex. 1). Most of those copyrighted images overlapped with the images that Capitani licensed to the Roebucks. (Compare J. Ex. 1, with P. Ex. 2 at 6, and P. Ex. 3 at 3). But, as relevant to this case, Capitani admitted that she did not register the Stafford Bull Terrier image with the U.S. Copyright Office. (Tr. Vol. 1 at 141).

7.      Although Capitani had not registered her Doggie Doodles at the time she signed the Licensing Agreement, she did not provide any images or artwork to Geoffrey Roebuck before obtaining a valid copyright for those images. (Id. at 30–31, 80–81).

---

[4] For purposes of these Findings of Fact and Conclusions of Law, the Court will refer to the copyrighted images by their corresponding breed names (i.e. "Beagle"), rather than the Captions (i.e. "Bea-gle to me"), SKU numbers (i.e. "B56"), or Dog Names (i.e. "Bongo").

3

B.  **Manufacture, Shipment, and Disbursement of Wagging Tail Dog Wall Clocks**

8.      Geoffrey Roebuck initially emailed Capitani sample pictures of "Moving Tail Wall Clocks" containing images of Doggie Doodles for her approval (see P. Ex. 5), and Capitani responded with modified images that would better fit the manufacturer's wall clock molds. (Tr. Vol. 1 at 33–38, 85–86, 107).

9.      On August 18, 2014, Geoffrey Roebuck met Capitani in Nashville, paid her $800, and showed her some digital photographs of sample wall clocks. (Id. at 41–45, 85, 136; P. Ex. 9). Capitani's handwritten notes from this meeting (P. Ex. 8), the purchase order Geoffrey Roebuck gave her (P. Ex. 9), and Nimeth's testimony (Tr. Vol. 2 at 52–56) all confirm that the $800 represented royalties for manufacturing products that would be shipped to an Australia retailer, "Glass Illusions Pty Limited."[5]

10.      At some point either slightly before or after the August 18, 2014 meeting, Geoffrey Roebuck engaged a Chinese company, Minhou Bolai Arts & Crafts Co., LTD ("Minhou Bolai"), to manufacture several thousand "wagging tail dog" wall clocks bearing images from Doggie Doodles (hereinafter "Wagging Tail Dog Wall Clocks").[6] (Tr. Vol. 2 at 27–28; D. Exs. 9, 10). The evidence at trial established that this was the first and only production run of these clocks. (Tr. Vol. 2 at 14–15). Some of those clocks were shipped to Australia in August 2014 to fulfill Glass Illusion Pty Limited's purchase order.[7] (See id. at 55–56).

---

[5] Capitani testified that she believed the $800 represented a partial payment of overdue royalties that Geoffrey Roebuck owed her from a *prior* shipment of wall clocks in 2013. (Tr. Vol. 1 at 42–44). The Court does not find Capitani's testimony credible on this issue because she did not know who Geoffrey Roebuck engaged to manufacture, distribute, retail, or sell products pursuant to the License Agreement. (Id. at 74, 136, 155–56).

[6] Because neither party presented evidence establishing *when* Minhou Bolai manufactured the wall clocks, the Court infers that the production occurred sometime in August or September 2014. (See Doc. Nos. 110 at 29; 112 at 6).

4

11.     After the August 18, 2014 meeting, Geoffrey Roebuck gave Capitani four representative sample wall clocks manufactured by Minhou Bolai. (Tr. Vol. 1 at 118–19).

12.     Geoffrey Roebuck had a friendly arrangement with Defendant MBG to accept shipment of the Wagging Tail Dog Wall Clocks and hold them on consignment for him in MBG's warehouse. (Tr. Vol. 2 at 105–07; see also P. Ex. 14 (noting that MiniBear Gems & Gifts was the consignee for a shipment of products from Minhou Bolai)). In return, MBG was able to keep the proceeds from online sales to offset its storage costs. (Tr. Vol. 2 at 107).

13.     On September 18, 2014, MBG received 1,248 Wagging Tail Dog Wall Clocks that Minhou Bolai shipped by air on Geoffrey Roebuck's behalf. (Tr. Vol. 1 at 175–176; P. Ex. 15). Those wall clocks contained copyrighted dog breed images from Doggie Doodles. (Compare P. Ex. 15, with J. Ex. 1; see also Tr. Vol. 1 at 179).

14.     The 1,248 wall clocks MBG received by air in 2014 did not include a logo, Capitani's name, or any other indicia of coypright. (Tr. Vol. 1 at 176–78). And MBG neither discussed with Geoffrey Roebuck where the artwork for the clocks came from, nor asked him to present any valid license to sell the products. (Id. at 176–77; see also Doc. No. 113 at 5 ¶¶ 35–38). Instead, MBG simply relied on Geoffrey Roebuck's oral representation that the products were legal and licensed to sell, which was MBG's normal practice. (Tr. Vol. 1 at 177–78).

15.     Minhou Bolai shipped another 3,120 wall clocks by sea on September 21, 2014, (P. Ex. 14), but MBG never received that shipment because Geoffrey Roebuck failed to pay shipping costs and the clocks were seized by U.S. Customs and Border Protection. (Tr. Vol. 2 at 27, 52–53; D. Ex. 8). Eventually, Joaquin Imports & Exports acquired many of these wall clocks from U.S. Customs. (Tr. Vol. 2 at 57). On January 4, 2019, MBG purchased 2,000 of these clocks

---

[7] There is no indication that Capitani sued Glass Illusion Pty Limited for copyright infringement.

5

(approximately 1,800 of which were Wagging Tail Dog Wall Clocks) from Joaquin Imports & Exports. (Id. at 56–60, 65; P. Ex. 16).

16. In October 2014, MBG first put the Wagging Tail Dog Wall Clocks online for sale on its website, Amazon, and eBay. (Tr. Vol. 2 at 41, 53–54, 105–106).

17. According to Nimeth's credible testimony and his summary in Defendant's Exhibit 9, the Court finds that the following occurred with respect to the 1,248 Wagging Tail Dog Wall Clocks MBG received from Minhou Bolai:

- 252 clocks were sold online by MBG (Tr. Vol. 2 at 43);

- 660 clocks were shipped by MBG to Geoffrey Roebuck between November 2014 and November 2015 (Tr. Vol. 2 at 37; D. Ex. 11);

- 104 clocks were sold to retailers at the Sevierville, Tennessee gift show in November 2014, and MBG forwarded the payment for those clocks to Geoffrey Roebuck (Tr. Vol. 2 at 38–40; D. Ex. 12);

- 100 clocks were unaccounted for, but were likely also sold to retailers (Tr. Vol. 2 at 48–50);

- 101 clocks broke during shipment (Tr. Vol. 2 at 44); and

- 31 clocks are still in MBG's warehouse (Tr. Vol. 2 at 43–44).

(See D. Ex. 9).

C. **Termination of Licensing Agreement and Lawsuit Against Roebucks**

18. While all this was occurring, Geoffrey Roebuck allegedly failed to provide Capitani any physical samples or pay her timely royalties for years, as required by the Licensing Agreement. (Tr. Vol. 1 at 32). On April 21, 2014 (which was several months before Minhou Bolai manufactured the Wagging Tail Dog Wall Clocks), Capitani's lawyer sent the Roebucks a letter stating as follows:

. . . Despite my client's numerous requests to you, you have failed to perform your obligations under the Licensing Agreement you entered into on July 28, 2011. . . .

6

However, Ms. Capitani would like to give you one last opportunity to cure your breach of the contract. Therefore, please contact me within 30 days, or by **May 21, 2014**, to discuss an amicable resolution of this matter.

If the breach has not been cured by that time, we will consider the Licensing Agreement terminated[.] . . .

(P. Ex. 6). Geoffrey Roebuck never responded to this letter, although Capitani did not know for sure whether he actually received it. (Tr. Vol. 1 at 96).

19.     Other than paying Capitani $800 on August 18, 2014, the Roebucks failed to perform their obligations under the Licensing Agreement, including sending Capitani quarterly royalty reports or paying her at least $25,000 annually. (Id. at 32–33). Accordingly, on May 26, 2015, Capitani's counsel sent another letter to Geoffrey Roebuck stating, among other things:

. . . Despite being given one last opportunity to cure your breach as afforded in the April 21, 2014 letter, you have failed to do so. Therefore, pursuant to the April 21, 2014 letter, we consider the Licensing Agreement terminated as of May 21, 2014[.] . . .

(P. Ex. 7).

20.     In November 2015, Capitani discovered that Geoffrey Roebuck was still selling products online that contained her copyrighted Doggie Doodle images. (Tr. Vol. 1 at 100–01, 105). She also noticed that these products did not contain her logo. (Id. at 100).

21.     On April 14, 2016, Capitani filed a lawsuit against the Roebucks for copyright infringement and breach of contract (hereinafter "Capitani I"). (J. Ex. 2). Specifically, Capitani claimed that the Roebucks violated her exclusive copyrights in the following twenty images from Doggie Doodles: Beagle; Bichon Frise; Border Collie; Chihuahua; Cocker Spaniel (blonde); Cocker – Springer Spaniel; French Bulldog (black); German Shepherd; Golden Retriever; Jack Russell Terrier; Labrador Retriever (black); Labrador Retriever (brown); Labrador Retriever (yellow); Rottweiler; Schnauzer; Sheltie; Westie; Yorkie; Lhasa Apso; and Staffordshire Bull Terrier. (Doc. No. 32 at 4–6, n. 1–4).

22.     On October 27, 2017, the Court entered a default judgment against the Roebucks in <u>Capitani I</u> and awarded Capitani $74,100 in compensatory damages for the breach of contract, $30,000 in statutory damages (which represents an award of twice the statutory minimum of $750, or $1,500, for each of the twenty copyrighted images listed above), and $29,707.34 in attorney's fees and costs. (J. Ex. 2 at PAGEID # 181–82).

23.     The Court also issued the following permanent injunction:

[The Roebucks], their agents, servants, employees, and all persons acting under their permission and authority, as well as all other persons acting in concert or privity or in participation with them, [are] permanently enjoined and restrained from infringing, in any manner, [Capitani's] subject works at issue here, pursuant to 17 U.S.C. § 502.

(<u>Id.</u> at PAGEID # 182).

24.     To date, Capitani has not received any payment from the Roebucks other than the $800 Geoffrey Roebuck gave her on August 18, 2014. (Tr. Vol. 1 at 51).

D.      **Background of MBG and World of Miniature Bears**

25.     Theresa Yang is the owner and president of MBG and World of Miniature Bears. (<u>Id.</u> at 174). Christopher Nimeth is the Manager of Operations for both companies. (<u>Id.</u>). MBG and World of Miniature Bears also share the same office and warehouse space. (<u>Id.</u>). But despite these similarities, MBG and World of Miniature Bears are separate companies that serve different business purposes. (Tr. Vol. 2 at 17–18).

26.     MBG is a retail store that sells various products online. (<u>Id.</u> at 7–11). The domain name for MBG is "minibeargems.com." (<u>Id.</u> at 9).

27.     On the other hand, World of Miniature Bears is a wholesale business that manufactures and distributes plush stuffed miniature bears. (<u>Id.</u> at 15–16, 83–94). The domain name for World of Miniature Bears is "minibear.com." (<u>Id.</u> at 62). World of Miniature Bears' website contains links to MBG and other companies who sell its miniature bears to retail

8

customers, and the top of its website states: "Retail Purchase: www.MiniBearGems.com[.]" (D. Ex. 15; P. Ex. 39; Tr. Vol. 2 at 63–64, 101–02).

E.     **MBG Continued Advertising and Selling Wagging Tail Dog Wall Clocks**

28.     MBG has admitted (and the Court finds) that it advertised and sold Wagging Tail Dog Wall Clocks through its website, www.minibearsgems.com, and on online retail platforms, including Amazon and eBay. (See Tr. Vol. 1 at 184–85; Tr. Vol. 2 at 53–54).

29.     Indeed, the evidence at trial established that MBG in fact offered to sell or sold Wagging Tail Dog Wall Clocks bearing the following twenty images from Doggie Doodles after February 16, 2016:

    a.     Beagle (P. Exs. 12, 18);

    b.     Bichon Frise (P. Exs. 11, 13);

    c.     Border Collie (P. Exs. 11, 19);

    d.     Cavalier King Charles Spaniel (P. Ex. 20);

    e.     Chihuahua (P. Ex. 21);

    f.     Cocker Spaniel (blonde) (P. Exs. 10–11, 22);

    g.     Cocker – Springer Spaniel (P. Exs. 11, 23);

    h.     French Bulldog (black) (P. Ex. 24);

    i.     German Shepard (P. Exs. 10–11, 25);

    j.     Golden Retriever (P. Exs. 10, 26);

    k.     Jack Russell Terrier (P. Ex. 27);

    l.     Labrador Retriever (black) (P. Exs. 11, 28);

    m.     Labrador Retriever (brown) (P. Ex. 29);

    n.     Labrador Retriever (yellow) (P. Ex. 30);

    o.     Rottweiler (P. Exs. 10–11, 31);

9

p.      Schnauzer (P. Exs. 11, 32);

q.      Sheltie (P. Exs. 10–11, 33);

r.      Yorkie (P. Ex. 34);

s.      Lhasa Apso (P. Exs. 11, 35); and

t.      Siberian Husky (P. Ex. 36).

30.     Many of these sales were made through Amazon.com listings that described the product as a "Wagging Tail Dog Wall Clock for Dog Lover," followed by a specific dog breed such as Golden Retriever or German Shephard. (See P. Ex. 10). These listings also stated that the clocks were manufactured by "Passion for Pets" and shipped "from and [were] sold by MiniBearGems." (Id.; see also Tr. Vol. 1 at 53–54).

31.     Moreover, the "Product Description" for these listings stated that "World of Miniature was founded by the talented artist Theresa Yang in 1996. Becoming the highest volume manufacturer of miniature collectible plush bears and animals today with unique attention to detail." (P. Ex. 10). Nimeth testified credibly that this "language was put into the original product description for [MBG] when it incorporated in 2010 . . . [because] the only products being sold at that time were the World of Miniature Bears' products at retail." (Tr. Vol. 1 at 205). He also added that when MBG was "a new online entity," it added this language about "World of Miniature Bears so that people who knew that name would know the quality and understand the products they were buying from online." (Id. at 205–06). But this language "was never removed under certain templates and was repeated several times in many places that it shouldn't have been." (Id. at 206–07). Yang provided almost identical testimony (Tr. Vol. 2 at 99–100), which the Court also found credible.

32.     Yang further testified that World of Miniature Bears never owned or held inventory in Wagging Tail Dog Wall Clocks. (Tr. Vol. 2 at 104). And Nimeth testified that World of Miniature Bears had no involvement with the shipment or sale of those clocks. (Tr. Vol. 1 at 203; Tr. Vol. 2 at 31, 40). Capitani also admitted that she never saw any of her images on World of Miniature Bears' website. (Tr. Vol. 1 at 138, 159).

F.     **Capitani Files This Lawsuit Against Defendants for Copyright Infringement**

33.     In any event, Capitani filed this lawsuit on February 6, 2019 (hereinafter "Capitani II") against both MBG and World of Miniature Bears for allegedly violating the Copyright Act, 17 U.S.C. §§ 101–1401, and committing willful copyright infringement, in violation of 17 U.S.C. § 504(c)(2), by selling or offering to sell Wagging Tail Dog Wall Clocks bearing twenty images from Doggie Doodles.[8] (Doc. No. 1; see also Tr. Vol. 1 at 52; supra ¶ 29).

34.     Before filing this lawsuit, Capitani never notified Yang or Nimeth that Defendants may be selling unlicensed products or violating the injunction in Capitani I. (Tr. Vol. 2 at 60, 110–11). Indeed, Yang and Nimeth testified credibly that MBG had no knowledge of the Capitani I lawsuit or the judgment against the Roebucks until after Capitani II was filed. (Id. at 60, 110). The Court also finds credible Yang's testimony that MBG would have stopped selling the wall clocks if Capitani ever contacted her to do so. (Id. at 110).

## II.     CONCLUSIONS OF LAW

A.     **Liability for Copyright Infringement**

35.     "The Copyright Act provides protection for original works of authorship expressed in various media." Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004) (citing 17 U.S.C. §§ 101–1332). Subject to limited exceptions, "the owner of a copyright has the exclusive

---

[8] Unlike in Capitani I, there are no allegations that Defendants infringed on the Bichon Frise or Westie images.

rights (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work." Id. (citing 17 U.S.C. § 106). "Anyone who violates any of the exclusive rights of the copyright owner" is liable for infringement. 17 U.S.C. § 501(a).

36.     "A plaintiff may bring a claim against a person who infringes any of the plaintiff's exclusive rights in a copyright under § 106 by demonstrating two elements: '(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" Stromback, 384 F.3d at 293 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "A plaintiff may demonstrate that original elements of [her] work were copied through direct or indirect evidence." Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC, 958 F.3d 532, 536 (6th Cir. 2020) (citation omitted). "Direct evidence of copying is rare and may be established through evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants[.]" Id. (citations and internal quotation marks omitted).

37.     Most of the disputed issues that typically arise in copyright infringement cases are not present here. First, Capitani concedes that she did *not* own a valid copyright in the Staffordshire Bull Terrier image because she never registered that image with the U.S. Copyright Office before filing this lawsuit. (Doc. No. 112 at 4; Tr. Vol. 1 at 141). It is therefore undisputed that Capitani cannot receive damages or attorney's fees for any infringement of the Staffordshire Bull Terrier image. See 17 U.S.C. § 412 ("Registration as prerequisite to certain remedies for infringement").

38.     Second, the parties' Joint Exhibit 1 establishes (and the Court finds) that Capitani timely registered and owned a valid copyright in the twenty dog breed images from Doggie Doodles that remain at issue in this case. (See *supra* ¶ 29).

12

39.     Third, Nimeth admitted (and MBG does not dispute) that MBG advertised, displayed, distributed, and sold wall clocks bearing each of these twenty copyrighted images of Doggie Doodles through its website, www.minibeargems.com, and online retailers. (Tr. Vol. 1 at 175–20; Doc. No. 115 at 7 ¶ 42). Based on this direct evidence of infringement, the Court finds as a matter of law that MBG copied the constituent elements of Capitani's copyrighted work by selling wall clocks bearing twenty separate images from Doggie Doodles.[9]

40.     But the Court's inquiry does not end there because Defendants make several arguments about why they should not be held liable for copyright infringement. Based on these arguments, the Court will next address each of the following issues: (1) Whether res judicata bars Capitani's claims against Defendants; (2) Whether World of Miniature Bears ever advertised, displayed, distributed, or sold wall clocks bearing Capitani's copyrighted images; (3) Whether the "first sale doctrine" applies here; and (4) Whether the applicable statute of limitations bars Capitani's claims.

### 1.     Waiver of Res Judicata Defense

41.     On the eve of trial, Defendants argued for the first time that res judicata precludes Capitani's claims in this case because they could have been litigated in Capitani I. (Doc. No. 96 at 3–8, 23–26). As Capitani correctly responds, however, Defendants waived this argument by not timely raising the defense of res judicata in their responsive pleadings. (Doc. Nos. 97 at 3–5; 117 at 5–6).

---

[9] There is also significant indirect evidence of copyright infringement in this case because MBG had *access* to the wall clocks in its warehouse and the dogs depicted on the Wagging Tail Dog Wall Clocks are *substantially similar* to the corresponding images of Doggie Doodles. See Kohus v. Mariol, 328 F.3d 848, 853–54 (6th Cir. 2003) (quoting Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir. 1999)) ("[A] plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.").

42. Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata[.]" Fed. R. Civ. P. 8(c). The word "must" in Rule 8(c) signifies that this obligation is mandatory.

43. Rule 8(c) also "clearly frames res judicata as an affirmative defense, which means that it can be waived and that it does not go to subject-matter jurisdiction. O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 582 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) (citation omitted); see also Hutcherson v. Lauderdale Cty., Tenn., 326 F.3d 747, 757 (6th Cir. 2003).

44. Here, Capitani put Defendants on notice of Capitani I on February 6, 2019 by attaching the default judgment order to the Complaint. (Doc. No. 1-12). Defendants did not raise the affirmative defense of res judicata in their respective Answers. (Doc. Nos. 8, 9). Instead, Defendants waited until one week before trial to assert this defense in their pre-trial brief. (See Doc. No. 96). Given this inexplicable delay, the Court concludes that Defendants waived their potential res judicata defense and will not consider that defense here. Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004) (citation omitted) ("Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.").

2.      World of Miniature Bears' Liability

45. Next, the Court finds that Capitani did not satisfy her burden of proof to show that World of Miniature Bears is liable for copyright infringement.

46. Despite having common ownership, World of Miniature Bears and MBG are separate companies that conduct business differently. (Tr. Vol. 2 at 17). World of Miniature Bears does not sell *any* products online and was not listed as a shipper or seller on any wall clocks at issue in this case. (See id. at 11–12, 40, 101; see also P. Ex. 32). Yang also testified credibly that World of Miniature Bears never even owned or held inventory in Wagging Tail Dog Wall Clocks.

14

(Tr. Vol. 2 at 104). Notably, even Capitani conceded that she never saw any product bearing her images on World of Miniature Bears' website. (Tr. Vol. 1 at 138, 158–59).

47.     Capitani's primary argument that World of Miniature Bears is liable for copyright infringement is that the online product description for the wall clocks states: "World of Miniature was founded by the talented artist Theresa Yang in 1996." (P. Ex. 10). But based on the testimony from Nimeth and Yang, the Court concludes that this product description was merely part of a template created when MBG first became a company and exclusively sold World of Miniature Bears' products online. (Tr. Vol. 2 at 11, 99–100). When MBG started selling other products, including wall clocks, Yang accidentally continued using this outdated template because she lacked computer skills to change it. (Id. at 99–100, 102). The Court finds this testimony credible, particularly because the product description at issue has nothing to do with Wagging Tail Dog Wall Clocks. (See P. Ex. 10).

48.     Because Capitani did not prove by a preponderance of the evidence that World of Miniature Bears ever advertised, displayed, sold, or offered to sell a product bearing the images of Capitani's Doggie Doodles, the Court concludes that World of Miniature Bears is not liable for copyright infringement in this case. The Court will enter judgment in favor of World of Miniature Bears and address the remaining arguments in this case solely as they relate to MBG.

          3.     Statute of Limitations

49.     MBG argues that the statute of limitations bars Capitani's copyright infringement claims in this case. (Doc. No. 110 at 15–19). The Court disagrees.

50.     A copyright infringement claim is subject to a three-year statute of limitations, which "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 390 (6th Cir. 2007) (quoting Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir.

15

2004)); see also 17 U.S.C. § 507(b). The accrual period begins to run with each new "infringing act," and "a claim for copyright infringement can accrue more than once because each infringement is a distinct harm." Roger Miller, 477 F.3d at 390 (citing Rhyme Syndicate, 376 F.3d at 621).

51.     Thus, the proper inquiry here is not when Capitani was *first aware* of potentially infringing acts, but rather, whether any infringing acts subject to this lawsuit *occurred* within the statute of limitations period. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 672 (2014) ("A copyright claim thus arises or 'accrue[s]' when an infringing act occurs."). Because Capitani filed the Complaint in this case on February 6, 2019, (Doc. No. 1), the applicable statute of limitations bars her potential infringement claims if they accrued before February 6, 2016, but does not preclude claims that accrued after that date. See Roger Miller, 477 F.3d at 390 (quoting Rhyme Syndicate, 376 F.3d at 621).

52.     MBG disagrees with these legal principles and argues that the statute of limitations period for Capitani's claims began in the fall of 2014 when "the images were published online for the first time for the world to see," and not the date of "each individual sale of a wagging tail dog clock." (Doc. No. 110 at 17). But regardless of when the images were published and offered for sale, each actual sale constituted a new act of infringement on Capitani's exclusive distribution rights. See Navarro v. Procter and Gamble Co., No. 1:17-cv-406, 2019 WL 162638, at *4 (S.D. Ohio Jan. 10, 2019) (citing Petrella, 572 U.S. at 672). And the Sixth Circuit makes clear that "each *new* infringing act causes a *new* three year statutory period to begin." Roger Miller, 477 F.3d at 390 (quoting Ritchie v. Williams, 395 F.3d 283, 288 n.5 (6th Cir. 2005)) (emphasis added). So, while Capitani could not sue MBG for any infringement that occurred before February 6, 2016, the statute of limitations does not bar any claims against MBG for sales made after that date.

16

53.     Because the Court found that Capitani proved by a preponderance of the evidence that MBG advertised or sold wall clocks bearing twenty of her copyrighted images after February 6, 2016 (see supra ¶ 29), the Court concludes that Capitani's copyright infringement claims related to those twenty images are not barred by the statute of limitations.

4.     First Sale Doctrine

54.     Last, MBG argues that, under the first sale doctrine, once Capitani accepted Geoffrey Roebuck's $800 royalty payment and allowed him to manufacture and sell products bearing her images, "she gave up her exclusive right as a copyright holder to control the distribution of her images on Wagging Tail Dog Wall Clocks[.]" (Doc. No. 110 at 9–14). As a result, MBG asserts that Capitani has no statutory claim for copyright infringement. (Id.). Again, the Court disagrees.

55.     A copyright owner's exclusive rights in a copyrighted work are expressly limited by the first sale doctrine, which is also an affirmative defense to copyright infringement. The first sale doctrine, codified at 17 U.SC. § 109, provides that once a copyright owner releases a copyrighted item "lawfully made under this title" (by sale, gift, or otherwise), the copyright owner relinquishes all rights to that particular copy. Quality King Distribs. Inc. v. L'anza Research Intern., Inc., 523 U.S. 135, 145 (1998); Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc., 474 F.3d 365, 373 (6th Cir. 2007). In other words, once a particular copy is sold, "the owner of [that] particular copy . . . or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy" without being liable for copyright infringement. 17 U.S.C. § 109(a).

56.     "The whole point of the first sale doctrine is that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." Quality King, 523 U.S. at 152.

17

57.     The Supreme Court has held that "because the protection afforded by § 109(a) is available only to the 'owner' of a lawfully made copy (or someone authorized by the owner), the first sale doctrine would not provide a defense to a [copyright infringement] action against any nonowner such as a bailee, a *licensee*, a consignee, or one whose possession of the copy was unlawful." Quality King, 523 U.S. at 146–47 (emphasis added) (discussing when § 109(a) protection applies to § 602(a) actions, which are used by copyright owners to prohibit foreign distributors from improperly importing copyrighted products into the United States); see also Vernor v. Autodesk, Inc., 621 F.3d 1102, 1107–08 (9th Cir. 2010) (holding that "[t]he first sale doctrine does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee").

58.     MBG relies heavily on Sturgis v. Hurst, an unpublished Eastern District of Michigan decision holding that the first sale doctrine prevented the plaintiffs in that case from asserting a claim for copyright infringement of a book when "plaintiffs put the book into the stream of commerce by publishing it and making it available for sale to the general public." No. 07-11301, 2007 WL 4247634, at *3 (E.D. Mich. Dec. 4, 2007). Here, however, Capitani is asserting a copyright infringement claim over products that she never authorized to be sold in the first place. Instead, she merely granted a temporary *license* to Geoffrey Roebuck to sell products bearing her copyrighted images. In lieu of paying Capitani for any of those copies, Geoffrey Roebuck agreed to give her 5% of Minhou Bolai's costs to manufacture the Wagging Tail Dog Wall Clocks. And, as further evidence that Geoffrey Roebuck was not an "owner" of the copies, the Licensing Agreement provided that, upon expiration, he was obligated to either sell the licensed products to Capitani at cost or destroy them. (P. Ex. 2 at 5).

18

59. The evidence at trial established that MBG received a shipment of wall clocks from Minhou Bolai on Geoffrey Roebuck's behalf and held them on consignment. (Tr. Vol. 1 at 183). Although MBG sold some of those clocks to offset its storage costs, MBG did not pay for the clocks, and neither Geoffrey Roebuck nor Capitani ever sold any of these clocks to MBG. (See Tr. Vol. 2 at 105–07). Thus, MBG (like Geoffrey Roebuck) never owned any products bearing images of Doggie Doodles for purposes of the first sale doctrine.

60. To be sure, if Geoffrey Roebuck complied with his obligations under the Licensing Agreement and lawfully made wall clocks bearing images from Doggie Doodles, the first sale doctrine would prevent Capitani from suing MBG for copyright infringement if MBG purchased those clocks and later resold them. But because Capitani never made a *sale* of her copyrighted images or placed those images into the stream of commerce, the Court concludes that MBG cannot successfully raise an affirmative defense based on the first sale doctrine.

B.  **Remedies for Copyright Infringement**

61. Having concluded that MBG is liable for copyright infringement, the Court must now determine whether Capitani is entitled to her requested relief of statutory damages under 17 U.S.C. § 504(c), injunctive relief under 17 U.S.C. § 502, and attorney's fees and costs under 17 U.S.C. § 505.

1.  Statutory Damages (17 U.S.C. § 504(c))

62. A copyright infringer is liable for either (1) the copyright owner's actual damages *or* (2) statutory damages, as provided in § 504(c). See 17 U.S.C. § 504(a). Section 504(c) provides:

[T]he copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes

19

of this subsection, all the parts of a compilation or derivative work constitute one work.

Id. "In copyright infringement cases, the district court has discretion to award statutory damages of any amount between this minimum and maximum for each infringement." Digital Filing Sys., LLC v. Aditya Int'l, 323 F. App'x 407, 412 (6th Cir. 2009).

63. Here, Capitani has elected to recover an award of statutory damages. But in determining how much to award Capitani, the Court must first resolve what the phrase "one work" means in § 504(c). Because § 504(c)(1) provides that "all the parts of a compilation or derivative work constitute one work," MBG argues that the entire compilation of Doggie Doodles constitutes "one work," and therefore Capitani can receive only one total award of statutory damages. (Doc. No. 114 at 12–13). Capitani responds that each dog breed illustration contained in Doggie Doodles is a separate work, and therefore she can receive twenty statutory damage awards for twenty separate infringements. Thus, the key issue is whether each individual dog breed image in Doggie Doodles constitutes a separate "work" or is instead part of one "compilation" under § 504(c).

64. The Court is not aware of any Sixth Circuit case that has addressed this issue, but in a recent case involving infringement of thirty-three copyrighted illustrations, the Seventh Circuit held that "the proper inquiry under § 504(c)(1) asks whether [the plaintiff's] 33 illustrations constitute 33 individual works"—meaning the plaintiff is entitled to thirty-three separate awards of statutory damages—"or instead are parts of two compilations (corresponding with the two advertising campaigns in which [the defendant] used the illustrations)"—meaning the plaintiff is entitled to only two awards of statutory damages. Sullivan v. Flora, Inc., 936 F.3d 562, 566, 568–69 (7th Cir. 2019). After summarizing how courts in several other circuits have approached this question, the Seventh Circuit persuasively held:

20

§ 504(c)(1) requires courts confronted with circumstances with multiple works and multiple infringements to determine . . . whether the protected works have value only in and through their composite whole (and thus meet the definition of a "compilation" in § 101) or instead have standalone value at the level of "one work." A protected work has standalone value if the evidence shows that work has distinct and discernable value to the copyright holder. . . .

The inquiry and fact finding demanded by § 504(c)(1) is more functional than formal, taking account of the economic value, if any, of a protected work more than the fact that the protection came about by an artist registering multiple works in a single application. The necessary finding requires a focus on where the market assigns value. By way of an analogy, imperfect though it may be, think in the first instance of the multiple protected works as a quilt and then ask whether any one individual patch has discernable, independent economic value—whether once separated from the quilt a particular patch lives its own copyright life (as "one work")—or instead whether the value lies in the patches' combined assembly into the quilt as a whole (as a "compilation").

Sullivan, 936 F.3d at 571–72. It then remanded the case to the district court to develop the record with these principles in mind. Id. at 572.

65.     Applying the test articulated in Sullivan here, the Court finds that each dog breed image from Doggie Doodles is a separate work with distinct and discernable value. The market (through the Roebucks) assigned value to *each* dog breed image, which is why the Roebucks entered into an agreement to license fifty-four separate images from Doggie Doodles. (P. Ex. 2). Otherwise, if these images' value derived solely from their combination and assembly into Doggie Doodles, there would be no reason for the Roebucks to license less than all of the images. And just because the dog breed images were registered on a single form does not mean they automatically constitute one work. See Sullivan, 936 F.3d at 568. Accordingly, the Court finds that *each* image from Doggie Doodles is a separate work, and that Capitani can recover twenty separate awards of statutory damages for infringement on twenty different images from Doggie Doodles.

66.     The second issue is whether Capitani can receive a second set of statutory damages for the same eighteen Doggie Doodles images that were also infringed in Capitani I. These images include the Beagle, Bichon Frise, Border Collie, Chihuahua, Cocker Spaniel (blonde), Cocker –

21

Springer Spaniel, French Bulldog (black), German Shepard, Golden Retriever, Jack Russell Terrier, Labrador Retriever (black), Labrador Retriever (brown), Labrador Retriever (yellow), Rottweiler, Schnauzer, Sheltie, Yorkie, and Lhasa Apso, but do *not* include the Cavalier King Charles Spaniel or the Siberian Husky.

67.     Based on the evidence presented at trial, the Court finds that MBG and the Roebucks both infringed on the eighteen copyrighted Doggie Doodles images listed above. "When multiple parties infringe on a copyright, the parties are jointly and severally liable." Corbis Corp. v. Starr, No. 3:07CV3741, 2009 WL 2901308, at *4 (N.D. Ohio Sept. 2, 2009) (citing NCR Corp. v. Korala Assoc., Ltd., 512 F.3d 807, 816 (6th Cir. 2008)); see also Pearson Educ., Inc. v. C&N Logistics, Inc., No. 3:18-cv-00438, 2021 WL 63043, at *12 (M.D. Tenn. Jan. 7, 2021). Accordingly, the Court concludes that MBG is jointly and severally liable for infringement of the eighteen dog breed images from Doggie Doodles that were subject to both this lawsuit and Capitani I, and individually liable for infringing on the Cavalier King Charles Spaniel and Siberian Husky images. See Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 313, 317–20 (S.D.N.Y. 2011) (noting that "allowing Plaintiffs to recover multiple awards per work based on the numbers of direct infringers is untenable," and finding "that Plaintiffs are entitled to a single statutory damage award from Defendants per work infringed, regardless of how many individual users directly infringed that particular work").

68.     In other words, Capitani will receive only *one* award of statutory damages for *each* of the eighteen images also infringed in Capitani I (i.e. eighteen total), but MBG and the Roebucks are jointly and severally liable for the amount that MBG needs to pay Capitani. Capitani will also receive one award of statutory damages for the King Charles Spaniel and Siberian Husky images (i.e. two total), to which MBG is solely liable for payment.

69. The third issue involving statutory damages is whether MBG is liable for willful infringement under 17 U.S.C. § 504(c)(2). Normally, the Court has discretion to award statutory damages of any amount between $750 and $30,000 for each copyrighted work infringed. But § 504(c)(2) provides that if "the copyright owner sustains the burden of proving, and the court finds that infringement was committed willfully," the Court has discretion to award up to $150,000 for each work infringed. Zomba Enters., Inc. v. Panorama Records, Inc., 491 F.3d 574, 578 (6th Cir. 2007) (citing 17 U.S.C. § 504(c)(2)). For infringement to be "willful," it must be done with: (1) knowledge that the conduct constitutes copyright infringement or (2) a reckless disregard to the copyright holder's property rights. Id. at 584–85; see also Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 278 (6th Cir. 2009).

70. Capitani argues that MBG committed willful infringement because it did nothing to verify whether Geoffrey Roebuck had a license to sell the wall clocks lawfully, and it never inquired why the clocks did not contain a logo or copyright designation. (Doc. Nos. 99 at 2–3; 113 at 12–13). The Court finds that although these facts *may* establish that MBG acted negligently, they do not show that MBG's conduct constituted willful infringement. First, Yang and Nimeth testified credibly that they did not know about the injunction in Capitani I or that MBG was selling infringing products before Capitani filed this lawsuit, which establishes that MBG did not *know* that its conduct constituted copyright infringement. (Tr. Vol. 2 at 60, 110–11). Second, Capitani admitted that she never informed MBG that it was selling infringing products, and Yang testified credibly that she "wish[ed] she did" because MBG "would [have] stopped." (Tr. Vol. 1 at 110–11). Third, and probably most important, MBG did not sell any infringing wall clocks after it learned about this lawsuit and its potential violation of U.S. copyright laws. (Tr. Vol. 2 at 43–44,

59). Thus, based on this record, the Court also does not find that MBG acted with a reckless disregard to Capitani's property rights.

71.     Because Capitani did not prove that MBG knowingly or recklessly infringed on her copyright interests, the Court will not award her heightened statutory damages for willful infringement.[10]

72.     Accordingly, the Court will award Capitani statutory damages in the amount of $15,000.00, which represents twenty separate $750.00 statutory awards for each of the twenty dog breed images from Doggie Doodles infringed. MBG is individually liable for $1,500.00 based on its infringement of the (1) Cavalier King Charles Spaniel and (2) Siberian Husky images. And MBG is jointly and severally liable with Geoffrey and Cathy Roebuck for $13,500.00 based on its infringement of the (1) Beagle, (2) Bichon Frise, (3) Border Collie, (4) Chihuahua, (5) Cocker Spaniel (blonde), (6) Cocker – Springer Spaniel, (7) French Bulldog (black), (8) German Shepard, (9) Golden Retriever, (10) Jack Russell Terrier, (11) Labrador Retriever (black), (12) Labrador Retriever (brown), (13) Labrador Retriever (yellow), (14) Rottweiler, (15) Schnauzer, (16) Sheltie, (17) Yorkie, and (18) Lhasa Apso images, which were subject to the default judgment in Capitani I.[11] (J. Ex. 2 at PAGEID # 181–82).

---

[10] Under 17 U.S.C. § 504(c)(2), "the court in its discretion may reduce the award of statutory damages to a sum of not less than $200" if the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." Although MBG never argued that it was an unwitting or innocent infringer (and thereby waived that argument), the Court finds that MBG's potentially negligent conduct did not make it an innocent infringer. If MBG had contacted Capitani or conducted any due diligence about whether it could lawfully sell the wall clocks, then it likely would have learned that the wall clocks were unlicensed.

[11] The Roebucks were ordered to pay twice the statutory minimum, or $27,000.00 total, for infringing on each of these same eighteen images. (J. Ex. 2 at PAGEID# 181). MBG is only jointly and severally liable for $13,500.00, meaning even if MBG paid this entire amount itself, the Roebucks would still be responsible for another $13,500.00.

24

2. <u>Permanent Injunction (17 U.S.C. § 502(a))</u>

73. The Copyright Act authorizes injunctive relief as a remedy for infringement "on such terms as [the Court] may deem reasonable to prevent or restrain infringement on a copyright." 17 U.S.C. § 502(a). Not only is the issuance of a permanent injunction justified when a plaintiff shows that there was "past infringement and a substantial likelihood of future infringement," but she is also *entitled* to an injunction if she can establish a threat of continuing infringement. <u>Bridgeport Music, Inc. v. Justin Combs Pub.</u>, 507 F.3d 470, 492 (6th Cir. 2007) (citations omitted). "This is because 'in copyright infringement actions, the denial of a request for injunctive relief could otherwise amount to a forced license to use the creative work of another.'" <u>Id.</u> (quoting <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 403 F.3d 958, 967–68 (8th Cir. 2005)) (internal quotation marks omitted).

74. In support of her request for a permanent injunction, Capitani argues that there is a substantial likelihood of ongoing infringement because MBG has approximately 1,800 infringing wall clocks in its possession with an online distribution system already in place. (Doc. No. 113 at 16). Although the Court agrees with these facts, it must keep in mind that the purpose of a permanent injunction is to prevent future copyright infringement, not to give the copyright holder a windfall. MBG spent thousands of dollars acquiring Wagging Tail Dog Wall Clocks from Joaquin Import and Exports that, at the time, MBG did not realize infringed on Capitani's copyright interests. (P. Ex. 16). And MBG neither intended to commit copyright infringement nor has expressed any willingness to sell infringing wall clocks in the future. Thus, the Court finds that it would not be equitable to grant Capitani's request to require MBG "to ship, at [its] expense, the Infringing Products to [Capitani] so that she may add her logo to the Infringing Products before selling them herself." (Doc. No. 113 at 17).

25

75.     On the other hand, the Court also disagrees with MBG's argument that the clocks it purchased from Joaquin Import and Exports are now free and clear of any copyright under U.S. Customs' regulations. (Doc. No. 110 at 26–27). Although it is certainly a close question (and one the Sixth Circuit has not addressed), there is at least some authority suggesting that Capitani may still have a copyright interest in the 1,800 wall clocks that U.S. Customs seized and later resold to Joaquin Import and Exports. See Topps Chewing Gum, Inc. v. Imperial Toy Corp., 686 F. Supp. 402, 407 (E.D.N.Y. 1988) (noting that "[t]he Customs Service is not a legal entity whose decisions can affect the valid title to . . . [a] copyright[.]").

76.     For these reasons, the Court finds that a status quo injunction is most appropriate. The Court will permanently enjoin MBG from infringing on Capitani's Doggie Doodles or selling any products bearing images from Doggie Doodles without Capitani's permission, but it will not require MBG to destroy the clocks or ship them to Capitani at its own expense. Under the terms of this injunction, the parties are free to do nothing with these wall clocks and maintain the status quo, or they could negotiate their own, mutually beneficial licensing agreement to sell these clocks.

### 3.     Attorney's Fees (17 U.S.C. § 505)

77.     The Copyright Act provides that "the court in its discretion may allow the recovery of full costs [and] may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. It is well-settled in the Sixth Circuit that "[t]he grant of fees and costs is the rule rather than the exception and they should be awarded routinely." Balsley v. LFP, Inc., 691 F.3d 747, 773 (6th Cir. 2012) (quoting Bridgeport Music, Inc. v. WB Music Corp., 520 F.3d 588, 592 (6th Cir. 2008)) (internal quotation marks omitted).

78.     Given this liberal standard, the Court invites Capitani to file a separate motion for attorney's fees, costs, expenses, and prejudgment interest against MBG. But the Court will reserve

decision on whether Capitani is entitled to these awards until presented with that motion. <u>See</u> Fed. R. Civ. P. 54; M.D. Tenn. L.R. 54.01.

## III. CONCLUSION

For the foregoing reasons, the Court finds MBG liable to Capitani for copyright infringement but does not find World of Miniature Bears liable. The Court will award Capitani statutory damages from MBG in the amount of $15,000.00 and permanently enjoin MBG from selling the wall clocks in its possession that infringe on Capitani's Doggie Doodles.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE